UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAMILTON MUTUAL INSURANCE
COMPANY,

        Plaintiff,

v.

Case No.: 16-cv-13769
Honorable Gershwin A. Drain

GENESEE PEDIATRIC, P.C., *et al*.,

        Defendants.
_____/

## **OPINION AND ORDER DECLINING TO EXERCISE DISCRETIONARY JURISDICTION AND DISMISSING ACTION WITHOUT PREJUDICE**

### I.    INTRODUCTION

On October 23, 2016, Plaintiff Hamilton Mutual Insurance Company ("Hamilton") filed a Complaint against Defendants Genesee Pediatric, P.C. ("Genesee Pediatric"), and Jillian Donnert, as Personal Representative of the Estate of Lillian Love Ballard, seeking a declaratory judgment from this Court that Hamilton has no duty to defend and indemnify Genesee Pediatric and any of its employees in a lawsuit that Donnert filed on March 23, 2016, in the Genesee County Circuit Court.

This Court has discretion whether to exercise jurisdiction in declaratory

judgment actions. Because Hamilton failed to address all of the relevant factors this Court must consider in the exercise of that discretion, the Court ordered Hamilton to show cause why this case should not be dismissed. Hamilton filed its Response to the show cause order, which is now before the Court.

## II. FACTUAL BACKGROUND

Hamilton is an Iowa corporation that insured Genesee Pediatric under a business owner's liability insurance policy. The insurance policy under which Hamilton insured Genesee Pediatric states that Hamilton will pay those sums that an insured is legally obligated to pay because of "bodily injury" caused by an "occurrence" which takes place during the policy period. Hamilton is currently defending Genesee Pediatric in state court litigation stemming from the death of Donnert's daughter, Lillian, after she brought Lillian to a scheduled appointment at Genesee Pediatric on March 27, 2013.

Specifically, the state court complaint alleges that on March 26, 2013, Donnert took Lillian to Genesee Pediatric with complaints of respiratory distress caused by worsening asthma symptoms. On previous office visits, Dr. Manar Abed Hammoud, as well as the staff at Genesee Pediatric had been informed that, in addition to asthma, eczema and seasonal allergies, Lillian suffered from severe allergies to several food products, including milk, peanuts, tree nuts and pork. This critical information was documented throughout the records at Genesee Pediatric.

Because Lillian vomited in the office, her appointment was rescheduled for the following day.

Donnert brought Lillian in on March 27, 2013. Her respiratory symptoms were worse than the previous day. When Donnert arrived, she was informed that Dr. Hammoud had not yet arrived at the office. She informed the staff that she wanted to take her daughter directly to the hospital, but they asked her to wait so they could contact the doctor to get his input and recommendation. The staff inquired if Lillian had eaten anything that day. Donnert informed them that she had only consumed half a cup of orange juice. One of the staff members gave Lillian something to drink, which appeared to be juice. After drinking about half of it, Lillian began to vomit. She complained that her tongue was burning. When she started to turn blue, Donnert began screaming for help. She realized that her daughter was possibly experiencing anaphylaxis and asked the nurses on staff if she could medicate her daughter with the EpiPen, an injectable cartridge of Epinephrine designed for use in situations of anaphylaxis. The nurses refused Donnert's request.

Lillian was eventually taken by ambulance to the Hurley Medical Center, where she was placed on a ventilator until March 29, 2013, when her organs were harvested and life-saving support removed. An autopsy was performed by the Genesee County Medical Examiner who reported that Lillian died of an

"anaphylactic reaction due to the ingestion of a product containing milk in the setting of a previously documented milk allergy." The juice drink given to Lillian by the staff at Genesee Pediatric apparently contained milk or other food products to which Lillian was allergic. Donnert brings the following claims in the state court action: (1) medical negligence against Hammoud, (2) negligence against the nurses and medical assistants employed at Genesee Pediatric, (3) negligence against the office staff at Genesee Pediatric, and (4) medical negligence of Genesee Pediatric.

In the instant matter, Hamilton requests a declaratory judgment that it has no duty under the business owner's liability insurance policy to defend or indemnify Genesee Pediatric or its employees in the state action filed by Donnert. Hamilton specifically relies on certain exclusions from coverage under the subject policy, which state in relevant part:

> B. Exclusions
>
> 1. Applicable to Business Liability Coverage
>    This insurance does not apply to:
>
>    \*          \*          \*
>
>    j. Professional Services:
>       "Bodily injury" . . . caused by the rendering or failure to render any professional service. This includes but is not limited to:
>
>    \*          \*          \*

>> (4) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;
>> (5) Any health or therapeutic service treatment, advice or instruction;
>
> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by the insured, if the "occurrence" which caused the "bodily injury" . . . involved the rendering or failure to render of [sic] any professional service.

*See* Compl., Ex. C at 63-64. Hamilton argues that these exclusions bar coverage for the pending state court litigation and it is entitled to immediately withdraw from participation in the defense of Donnert's asserted claims.

## III. LAW & ANALYSIS

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a). The exercise of jurisdiction under the Act is within the sound discretion of the district court and declining jurisdiction generally "[r]ests on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)(internal quotations and citations

omitted).

The Sixth Circuit has repeatedly held that declining jurisdiction in an insurance coverage dispute when such jurisdiction could impact pending litigation in another court is a prudent exercise of a district court's discretion. *See Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) ("[A]dvance opinions on indemnity issues are seldom helpful in resolving an ongoing action in another court.") Rather, indemnity related disputes "should normally be filed, if at all, in the court that has jurisdiction over the litigation that gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and *res judicata* are created." *Id.*; *see also Nautilus Ins. Co. v. Grayco Rentals, Inc.*, No. 10-133-ART, 2011 U.S. Dist. LEXIS 22767, at *3 (E.D.Ky. Mar. 7, 2011) ("[I]t is a rare case in which federal district courts should assert jurisdiction over an insurance company's declaratory judgment action to resolve indemnity issues ancillary to an ongoing state-court case.")

While there is not "a per se rule against exercising jurisdiction in actions involving insurance coverage disputes[,]" *Bituminous*, 373 F.3d at 812-13, the potential danger of federal courts treading on states' efforts to regulate insurance companies has led the Sixth Circuit to hold "on a number of occasions that a district court should stay or dismiss complaints filed by insurance companies seeking a declaratory judgment as to their underlying state court lawsuits."

*Travelers Indemn. Co. v. Bowling Green Professional Assocs., PLC*, 495 F.3d 266, 273 (6th Cir. 2007).

A district court generally considers five factors to determine whether a case is appropriate for declaratory judgment: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used for the purpose of "procedural fencing" or "to provide an arena for *res judicata*;" (4) whether the use of a declaratory judgment would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; (5) whether there is an alternative remedy which is better or more effective. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).

### A) Settle the Controversy and Clarify the Legal Relations

The Sixth Circuit has developed seemingly inconsistent precedent as to the first factor this Court must consider. On the one hand, the Sixth Circuit has explained that this factor is concerned with whether a declaratory judgment will settle the underlying state controversy, while another group of cases holds that a declaratory judgment action need only settle the controversy between the parties in the declaratory judgment action -- the insurer and the insured. *See Western World Ins. Co. v. Hoey*, 773 F.3d 755, 760 (6th Cir. 2014).

7

The second factor this Court must consider is whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue. *Hoey*, 773 F.3d at 759. The second factor requires the Court to determine whether a declaratory judgment will "resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Flowers*, 513 F.3d at 557. The Sixth Circuit has noted that the second factor is "closely related to the first factor and is often considered in connection with it." *Id*.

Looking to the first two factors, the Court could resolve the insurance indemnity obligation between Hamilton and Genesee Pediatric by determining whether the professional services exclusion bars coverage under the subject policy. As such, factors one and two weigh in favor of exercising jurisdiction.

### B) Procedural Fencing

The third factor this Court must consider is whether the declaratory judgment action is being used for procedural maneuvering or is likely to cause a race for *res judicata*. *Hoey*, 773 F.3d at 759. This third factor is meant to preclude jurisdiction for "declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *Flowers*, 513 F.3d at 558 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). "The question is . . . whether the declaratory plaintiff has filed in an attempt to get her

choice of forum by filing first. *Id*. (quoting *AmSouth Bank*, 386 F.3d at 789). The Sixth Circuit has noted that it is "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id*. (citations omitted).

The Court finds that this factor weighs in favor of exercising jurisdiction because there is no evidence that the Plaintiff has acted improperly by filing the present suit.

### C) Friction between Federal and State Courts

For the fourth factor, district courts must consider whether an exercise of jurisdiction will increase the friction between federal and state courts. The Sixth Circuit has identified three sub-factors to consider when determining whether the exercise of jurisdiction would increase friction between federal and state courts. *Scottsdale*, 211 F.3d at 968. The first sub-factor considers whether the underlying factual issues are important to an informed resolution of the case. If the action involves resolution of factual issues being considered by the state court, federal jurisdiction is disfavored. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 560 (6th Cir. 2008). As to this factor, there does not appear to be factual issues that will need to be resolved by this Court and the state court. This factor does not favor abstention.

The second sub-factor considers whether the state trial court is in a better position to evaluate the relevant issues than is the federal court. *Scottsdale*, 211

F.3d at 968. This sub-factor favors abstention when issues of unsettled state law are implicated. *Travelers*, 495 F.3d at 272. Here, there are questions of state law that render the state court better suited to hear this indemnity dispute. Plaintiff argues that Donnert's claims against Genesee Pediatric and its medical and non-medical staff stem from "the rendering or failure to render professional services" and therefore the policy's "professional services" exclusion bars coverage for Donnert's claims. Interpretation of insurance contracts is governed by Michigan law, "with which the [Michigan] state courts are more familiar and, therefore better able to resolve." *Travelers*, 495 F.3d at 273. Michigan "regulate[s] insurance companies for the protection of [its] residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Id.*

Whether telling Donnert to wait to take Lillian to the hospital so the staff could contact Dr. Hammoud, as well as whether providing Lillian a juice drink would be considered "professional services" under the subject policy's exclusions are just some of the unsettled issues of insurance contract interpretation governed by Michigan law raised by the instant suit. The Court is not inclined to encroach upon the State of Michigan's efforts to protect its residents through its regulation of insurance companies. There is a serious risk that this Court may reach a conclusion concerning interpretation of the subject policy's "professional services"

exclusion that would be contrary to that reached by the state court. Because the Sixth Circuit has made it clear that it "generally consider[s] state courts to be in a better position to evaluate novel questions of state law[]," *Flowers*, 513 F.3d at 560, this factor favors abstention.

The third sub-factor focuses on whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory action. *Scottsdale*, 513 F.3d at 560. The Sixth Circuit has indicated that the "final sub-factor focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in the state court." *Flowers*, 513 F.3d at 561. Similar to the conclusions reached as to the second sub-factor, abstention is appropriate under this sub-factor because the state courts are (1) more familiar with issues of insurance contract interpretation and (2) better situated to identify and enforce relevant public policy considerations. *Id*.

After considering all of the sub-factors, the Court concludes that the fourth factor weighs in favor of abstention. Given that the state court is in a better position to resolve the issues giving rise to this action, this factor as a whole weighs against exercising jurisdiction due to the real possibility of creating friction between federal and state courts.

### D) Alternative Remedy

Finally, an alternative remedy exists for resolving the instant insurance coverage dispute. Michigan law permits insurers to bring declaratory actions in state court. *See* Mich. Ct. R. 2.605; *see also Rose v. State Farm Mut. Auto Ins. Co.*, 274 Mich. App. 291, 294, 732 N.W.2d 160, 162 (2000). Plaintiff concedes the availability of an alternate remedy, as well as notes the Sixth Circuit's position that "[a] district court should 'deny declaratory relief if an alternative remedy is better or more effective.'" *Flowers*, 513 F.3d at 562.

Here, the alternative remedy would be more effective than the instant federal declaratory action contrary to Plaintiff's assertion. Plaintiff could "have commenced a separate action, identical to the present action, in state court and moved for consolidation before the same judge presiding over the state court action." *Allstate Ins. Co. v. Garcia*, No. 13-10209, 2013 U.S. Dist. LEXIS 66807, at *2 (E.D. Mich. May 10, 2013). Because the issues Plaintiff presents are governed by state law only, "the state court is in a superior position to resolve this case." *Bituminous*, 373 F.3d at 816 ("We question the need for . . . declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner.") *Id.* at 816-17 (internal quotation marks omitted). The fifth and final factor therefore favors declining jurisdiction.

Balancing the factors, the Court concludes that the factors favor abstention. Any resolution to this matter could very well come at the cost of increasing the friction between state and federal courts and infringe upon the State of Michigan's interests in regulating insurance companies. The availability of a more effective remedy also favors abstention.

## IV. CONCLUSION

For the reasons articulated above, the Court declines jurisdiction and will dismiss this action. Accordingly, this matter is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Dated: November 22, 2016 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 22, 2016, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk